# United States Department of the Interior

NATIONAL PARK SERVICE
1849 C Street, N.W.
Room 2229
Washington, DC 20240

IN REPLY REFER TO:
DOI-2026-003368

June 11, 2026

Rachel Johnson
6218 Georgia Ave, NW #5001
Washington, DC 20011

Via email: rachel@lawyersforgoodgovernment.org

Dear Rachel Johnson:

We are writing regarding Freedom of Information Act (FOIA) request numbered **DOI-2026-003368** and the FOIA lawsuit captioned as ***Lawyers for Good Government, Inc., v. National Park Service and the United States Department of the Interior, No. 2:26-cv-01504.***

Request **DOI-2026-003368**, submitted on January 23, 2026, seeks the following:

> *This is a request under the Freedom of Information Act, 5 U.S.C. § 552, and the Department of the Interior's FOIA regulations, 43 C.F.R. Part 2. We seek records, documents, guidance, and communications, maintained by the National Park Service (NPS) and/or the Department of the Interior (DOI), or any other office reasonably likely to maintain responsive records – including by staff at the Office of the Secretary, Arlington House, the Robert E. Lee Memorial (hereinafter "Arlington House"), the George Washington Memorial Parkway Headquarters, the National Capital Area Regional Office, and NPS Headquarters, relating to*
>
> *a) the implementation of Executive Order No. 14253, "Restoring Truth and Sanity to American History," (E.O. 14253), and Order No. 3431 issued by the Secretary of the Interior (Order 3431) as applied to Arlington House; and*
> *b) the removal or alteration of museum exhibits and/or literature or other programming as it relates to the implementation of the Orders.*
>
> *Various people who engage with NPS education have reported that the President issued this Order and the Secretary implemented it to suppress or distort historical education available at NPS sites, contrary to their statutory duties. We have reason to believe that implementation of this order led to substantive changes and censorship at Arlington House, including the removal of the Arlington House Jr. Ranger booklet, and, possibly, how the accounts of enslaved people are retold. This request is made so that we can better understand what, if anything, has changed at Arlington House and related sites since the implementation of E.O. 14253. The request period is March 1, 2025, to the present, unless otherwise stated.*

*I. Description of Records Requested*

*Please search all relevant offices, including Arlington House, George Washington Memorial Parkway Headquarters, regional directors, interpretation and education divisions, and other relevant headquarters divisions at NPS and Interior.*

1. *Decision-making and Administrative Record*
    a. *All documents (including communications, policies, standards, guidance, memoranda, instructions, meeting notes, analyses, public feedback, and orders, etc.) related to the implementation of E.O. 14253 and Order 3431 as they relate to Arlington House, including, but not limited to, all documents regarding interpretive rangers and volunteer docents, requests to review Arlington House or its materials in response to the orders, lists of sites/information/displays/literature subject to review, communications about those things subject to review, and final determinations as to what action should be taken;*
    b. *All policies, procedures, standards, guidance, memos, instructions, and other documents regarding the implementation of E.O. 14253 and Order 3431 in general;*
    c. *All documents reflecting the reasons for, or analysis of, and decision to remove, alter, or limit, children's interpretive materials about racism, oppression, chattel slavery, enslaved people, or slaveholders, at Arlington House, including Junior Ranger literature and material previously available in paper format and on the Arlington House website (https://www.nps.gov/arho/learn/kidsyouth/index.htm);*
    d. *All documents reflecting the reasons for, or analysis of, any decision to remove, alter, or limit any other exhibit, object, communication, or literature about race, racism, oppression, chattel slavery, enslaved people, or slaveholders, and/or chattel slavery at Arlington House;*
    e. *All documents reflecting the reasons for, or analysis of, any decision to direct or instruct any Arlington House staff or volunteer to alter or limit tour content, interpretive programming, historical content, or speech related to the history of race, racism, oppression, chattel slavery, or enslavement at Arlington House, including but not limited to references to the sexual assault of enslaved people by their enslavers;*

2. *Descendant Engagement a. All documents, communications, notes, evaluations, or records regarding descendants of the Custis, Lee, or Syphax family members, or any member of Arlington House Descendants' Family Circle ("Family Circle") or the Family Circle generally, and interpretive programming at Arlington House as it relates to the implementation of E.O. 14253 and Order 3431;*
3. *Policies, Directives, and Training Materials a. All guidance documents, directives, memoranda, or internal instructions that apply to Arlington House, governing staff or volunteer discussion, education, or interpretation of the*

*history of chattel slavery, race, racism, or oppression including discussion of living conditions, sexual violence, torture, or other "shameful" historical topics.*

4. *Catch-all Clause a. All records otherwise describing, analyzing, or reflecting the rationale, consultation, or approval process for the above decisions or any decisions to amend, alter, remove, curtail, reinstate, or prohibit communications, materials, or objects as they relate to race, racism, oppression, chattel slavery, enslaved people, slaveholders, or the Family Circle at Arlington House.*

*II. Preferred Format*

*Please provide records in searchable electronic format via email or a secure file transfer. If stored in a database, please export in CSV or excel format.*

*III. Segregability and Exemption Index*

*If any information is withheld, please release all reasonably segregable non-exempt portions and provide an itemized index describing each withheld record, the applicable exemption, and justification.*

We are writing to partially respond to your request. Part of your request is already publicly available at: *https://www.nps.gov/aboutus/foia/upload/NPS_SO3431_QR_Comments-For-Release.xlsx*. These materials are being withheld in part under the following FOIA Exemption: (b)(6).

**Exemption 6—43 C.F.R. §§ 2.23, .24**

Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *5 U.S.C. § 552(b)(6)*. We are withholding two hundred and twenty-seven cells (227) in part under Exemption 6.

The phrase "similar files" covers any agency records containing information about a particular individual that can be identified as applying to that individual. To determine whether releasing records containing information about a particular individual would constitute a clearly unwarranted invasion of personal privacy, we are required to balance the privacy interest that would be affected by disclosure against any public interest in the information.

Under the FOIA, the only relevant public interest to consider under the exemption is the extent to which the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to. The burden is on the requester to establish that disclosure would serve the public interest. When the privacy interest at stake and the public interest in disclosure have been determined, the two competing interests must be weighed against one another to determine which is the greater result of disclosure: the harm to personal privacy or the benefit to the public. The purposes for which the request for information

is made do not impact this balancing test, as a release of information requested under the FOIA constitutes a release to the general public.

The information that has been withheld under Exemption 6 consists of personal information, including names, email addresses, mailing addresses, and phone numbers and we have determined that the individuals to whom this information pertains have a substantial privacy interest in withholding it. Additionally, we have determined that the disclosure of this information would shed little or no light on the performance of the agency's statutory duties. Because the harm to personal privacy is greater than whatever public interest may be served by disclosure, release of the information would constitute a clearly unwarranted invasion of the privacy of these individuals and we are withholding it under Exemption 6.

We reasonably foresee that disclosure would harm an interest protected by one or more of the nine exemptions to the FOIA's general rule of disclosure.

Nicholas Banco, National Park Service Freedom of Information Act Officer, is responsible for this partial denial. Alexi Qvarnstrom, Attorney-Advisor with the Office of the Solicitor, was consulted.

We are continuing to search for additional records that are responsive to your request.

Now that this matter is the subject of active litigation, please direct any communication regarding this request through Brian Kipnis, Assistant United States Attorney, *Brian.Kipnis@usdoj.gov*.

Sincerely,

NICOLE TURNER

Digitally signed by NICOLE TURNER
Date: 2026.06.11 16:05:00 -04'00'

Nicole Turner
Government Information Specialist
National Park Service