Judge Whitehead

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LAWYERS FOR GOOD GOVERNMENT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL PARK SERVICE; and the UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>Defendants. | CASE NO. C26-1504JNW<br><br>**DECLARATION OF LEAH FAIRMAN** |

Pursuant to 28 U.S.C. § 1746, I, Leah Fairman, declare and state as follows:

1. I am the Freedom of Information Act Officer ("FOIA") for the Office of the Secretary ("OS") within the United States Department of the Interior. I have served in this role since November 2023. Prior to serving in this capacity, I served as the Deputy FOIA Officer for OS since May 2021. Prior to serving as the OS Deputy FOIA Officer, I served as a Government Information Specialist ("GIS") with OS from March 2016 to May 2021.

2. The OS FOIA Program processes all FOIA requests submitted to OS, which includes the Secretary of the Interior and his staff. In addition, the OS FOIA Program handles FOIA requests directed to certain secretarial officers, designated staff immediately serving those officials and



UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

offices which serve Department-wide functions or perform program functions directly on behalf of the Secretary. This includes most Assistant Secretaries, the Interior Business Center, the Office of Natural Resource Revenue, and the Office of Valuation Services.

3. As the OS FOIA Officer, I am responsible for overseeing the operations of the OS FOIA Program and staff, and, in some cases, communicating with FOIA requesters; searching for, collecting, and reviewing potentially responsive records; suggesting withholdings; considering whether requesters qualify for fee waivers or expedited processing; and producing responsive records.

4. I make the following statements based upon my personal knowledge, which in turn is based upon information furnished to me in the course of my official duties. I am familiar with the efforts of OS personnel to process the FOIA request that is the subject of this litigation, and I oversee coordinating the agency's search and processing efforts with respect to this request. To prepare this declaration, I reviewed the complaint and Plaintiff's Motion for Order Setting Production Schedule in *Lawyers for Good Government v. National Park Service, et al.*, Civ. A. No. 26-1504 (JNW) (D.D.C.), consulted with OS staff and reviewed relevant information in the Department's FOIA database, FOIAXpress.

5. The Department logs every FOIA request it receives in FOIAXpress, and the database includes, but is not limited to, the following for each request: a copy of the FOIA request; an assigned request number; the dates the request was requested and received; administrative notes related to clarifying the scope and searches for the request; correspondence sent and received pertaining to the request; and other administrative procedural history of the request.

6. This declaration explains OS' specific efforts made for Plaintiff's FOIA request at issue in this litigation and OS' procedures for processing FOIA requests generally.



UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

**OS' PROCESSING OF PLAINTIFF'S FOIA REQUEST**

7. On January 23, 2026, OS received from Plaintiff a FOIA request seeking:

> [R]ecords, documents, guidance, and communications, maintained by the National Park Service (NPS) and/or the Department of the Interior (DOI), or any other office reasonably likely to maintain responsive records – including by staff at the Office of the Secretary, Arlington House, the Robert E. Lee Memorial (hereinafter "Arlington House"), the George Washington Memorial Parkway Headquarters, the National Capital Area Regional Office, and NPS Headquarters, relating to a) the implementation of Executive Order No. 14253, "Restoring Truth and Sanity to American History," (E.O. 14253), and Order No. 3431 issued by the Secretary of the Interior (Order 3431) as applied to Arlington House; and b) the removal or alteration of museum exhibits and/or literature or other programming as it
> relates to the implementation of the Orders.
>
> Various people who engage with NPS education have reported that the President issued this Order and the Secretary implemented it to suppress or distort historical education available at NPS sites, contrary to their statutory duties. We have reason to believe that implementation of this order led to substantive changes and censorship at Arlington House, including the removal of the Arlington House Jr. Ranger booklet, and, possibly, how the accounts of enslaved people are retold. This request is made so that we can better understand what, if anything, has changed at Arlington House and related sites since the implementation of E.O. 14253.
>
> The request period is March 1, 2025, to the present, unless otherwise stated.
>
> I.Description of Records Requested
>
> Please search all relevant offices, including Arlington House, George Washington Memorial Parkway Headquarters, regional directors, interpretation and education divisions, and other relevant headquarters divisions at NPS and Interior.
>
> 1.Decision-making and Administrative Record
>
> a.All documents (including communications, policies, standards, guidance, memoranda, instructions, meeting notes, analyses, public feedback, and orders, etc.) related to the implementation of E.O. 14253 and Order 3431 as they relate to Arlington House, including, but not limited to, all documents regarding interpretive rangers and volunteer docents, requests to review Arlington House or its materials in response to the orders, lists of sites/information/displays/literature subject to review, communications about those things subject to review, and final determinations as to what action should be taken;



UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

b.All policies, procedures, standards, guidance, memos, instructions, and other documents regarding the implementation of E.O. 14253 and Order 3431 in general;

c.All documents reflecting the reasons for, or analysis of, and decision to remove, alter, or limit, children's interpretive materials about racism, oppression, chattel slavery, enslaved people, or slaveholders, at Arlington House, including Junior Ranger literature and material previously available in paper format and on the Arlington House website (https://www.nps.gov/arho/learn/kidsyouth/index.htm);

d.All documents reflecting the reasons for, or analysis of, any decision to remove, alter, or limit any other exhibit, object, communication, or literature about race, racism, oppression, chattel slavery, enslaved people, or slaveholders, and/or chattel slavery at Arlington House;

e.All documents reflecting the reasons for, or analysis of, any decision to direct or instruct any Arlington House staff or volunteer to alter or limit tour content, interpretive programming, historical content, or speech related to the history of race, racism, oppression, chattel slavery, or enslavement at Arlington House, including but not limited to references to the sexual assault of enslaved people be their enslavers;

2.Descendant Engagement

a.All documents, communications, notes, evaluations, or records regarding descendants of the Custis, Lee, or Syphax family members, or any member of Arlington House Descendants' Family Circle ("Family Circle") or the Family Circle generally, and interpretive programming at Arlington House as it relates to the implementation of E.O. 14253 and Order 3431;

3.Policies, Directives, and Training Materials

a.All guidance documents, directives, memoranda, or internal instructions that apply to Arlington House, governing staff or volunteer discussion, education, or interpretation of the history of chattel slavery, race, racism, or oppression including discussion of living conditions, sexual violence, torture, or other "shameful" historical topics.

4.Catch-all Clause

a.All records otherwise describing, analyzing, or reflecting the rationale, consultation, or approval process for the above decisions or any decisions to amend, alter, remove, curtail, reinstate, or prohibit communications, materials, or objects as they relate to race, racism, oppression, chattel slavery, enslaved people, slaveholders, or the Family Circle at Arlington House.



UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

8. On February 2, 2026, OS acknowledged receipt of Plaintiff's request and assigned it control number DOI-2026-003367. The letter also placed Plaintiff's request in the complex processing track and invoked the 10-day extension for unusual circumstances due to the need to search for and collect the requested records from field facilities or other units that are separate from the office processing the request. Finally, the letter denied Plaintiff's request for expedited processing because Plaintiff did not demonstrate any particular value that would be lost if the requested information is not disseminated quickly.

9. On or around February 6, 2026, OS began the search for responsive records and the search concluded on June 25, 2026, returning approximately 29 pages of records. On May 26, 2026, while the search was still ongoing, the assigned FOIA processor began their review of records. On June 23, 2026, the processor sent the records to the Office of the Solicitor for legal sufficiency review. No further records were found during the remainder of the search.

10. OS completed review of the 29 pages of records responsive to Plaintiff's request following the standard processing procedures discussed below. Upon review, OS determined that an outside agency has a substantial interest in the records because the records reflect deliberative communications between representatives of the Department and the outside agency. In addition, portions of the records originated from the outside agency or primarily concern the outside agency. Accordingly, OS concluded that it should consult with the outside agency consistent with the Department's FOIA regulations at 43 C.F.R. §§ 2.12(d) and 2.13.

11. On August 11, 2026, OS sent the records to the outside agency for consultation.

12. OS will complete its processing of the records once it receives a response from the outside agency. Upon response, OS will review the outside agency's recommendations and make necessary adjustments, if any, and finalize the records for release to Plaintiff. OS anticipates that



UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

once a consultation response is received and resolved, it will require approximately five business days to complete its review and issue a response.

13. I understand that Plaintiff seeks an order requiring OS to complete its search for any other responsive records before the end of October 2026, and to process and produce the latter records on a rolling basis of at least 500 pages per month beginning the end of October 2026. However, as explained above, OS has already completed its search for responsive records. In addition, OS has completed its review of the records, of which there are approximately 29 pages. The only processing that remains is consultation with an outside agency, the timing of which OS cannot control. Accordingly, unless OS receives a response from the outside agency by October 26, 2026, OS will be unable to produce any pages by the end of October 2026. Instead, OS will produce all responsive, non-exempt pages upon completion of the consultation process.

**OS' STANDARD PROCESSING PROCEDURES AND RATES**

14. The OS FOIA Program is responsible for responding to requests for records directed at various Departmental offices pursuant to the FOIA, including Plaintiff's request. The FOIA process, from receipt of a request to production of responsive records, requires numerous steps and involves multiple layers of review to ensure the records produced are indeed what the requester is seeking and that all segregable information that is not exempt from disclosure is identified and released to the requester. The following describes this process generally and any additional steps necessary for litigation cases.

15. The OS FOIA Program generally processes FOIA requests on a first-in, first-out basis within each of the Department's four request tracks: simple, normal, complex, and extraordinary. We must carefully balance multiple competing demands to ensure the best use of our finite resources in order to best serve the requesting public and prevent the monopolization of the OS FOIA Program by a few large requests. Accordingly, as described in the Department's regulations, OS uses multi-



UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

track processing, distinguishing between simple, complex, normal and extraordinary requests based on the amount of work or time required to process them. Requests placed in the simple track generally take between one to five workdays to process; requests placed in the normal track generally take between six to twenty workdays to process; requests placed in the complex track generally take between twenty-one to sixty workdays to process; and requests placed in the extraordinary track involve complex processing challenges generally take over sixty days to process.

16. Generally, complex requests cannot be processed within 20 working days. This is because most complex requests require one or more of the following: review of classified information, consultation with various offices internally and/or externally, and/or review of senior agency leadership equities. These processes require significantly more effort, staff time, and interagency or intra-Department consultation to process per request and pose unique challenges in searching, reviewing records, coordinating with interagency partners, and applying redactions.

17. OS placed Plaintiff's request in the complex track because the request seeks records requiring both interagency and intra-Department consultation and implicating senior agency leadership equities, as well as ongoing deliberative processes, which generally requires additional time for redaction and review.

18. Currently, the OS FOIA Program has 8 full-time staff members, including myself, the Deputy FOIA Officer, and 6 GIS, two of which are solely responsible for intake procedures and the processing of simple requests. These two intake GIS are only responsible for the following tasks: initial processing of requests submitted to OS, including acknowledging the request and assigning a processing track; corresponding with the requester regarding scope and other intake issues; tasking initial searches; and gathering records. The other four GIS are responsible for all other aspects of processing requests submitted to OS, including review of the potentially responsive records for responsiveness and exempt information, referrals and consultations with outside offices and



UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

agencies, and release of responsive records to requesters. The OS Deputy FOIA Officer is responsible for overseeing the intake operations, including, communicating with FOIA requesters; searching for and collecting potentially responsive records; and considering whether requesters qualify for fee waivers or expedited processing. In some instances, the duties also include taking on duties for specific cases – including reviewing records for responsiveness, suggesting proposed withholdings, handling all consultations, and producing responsive records. The time allotted to these processing duties is necessarily limited to the volume of requests OS receives, necessitating a high volume of intake duties.

19. Currently, of the four GIS employees available to process normal, complex and extraordinary requests, the first is actively processing approximately 32 requests, including 6 in litigation, inclusive of Plaintiff's request; the second is actively processing approximately 38 requests, including 5 in litigation; the third is actively processing approximately 23 requests, including 3 in litigation; and the final is actively processing approximately 17 requests, including 2 in litigation. In addition, the OS FOIA Officer is processing 1 litigated request, and the OS Deputy FOIA Officer is processing 3 requests. Both have limited ability to process or support additional requests due to their overarching managerial and intake responsibilities. In addition, OS currently has approximately 653 requests to be assigned for processing.

20. When OS receives a FOIA request, the OS FOIA Office evaluates the request to determine which offices or other records systems within the OS may reasonably be expected to contain the records requested. This determination is based on the description of the records requested and requires a familiarity with the holdings of the Department's records systems, applicable records disposition schedules, and the substantive and functional mandates of numerous Department offices.

21. In most litigation cases, a GIS—who has responsibility for managing the processing of a FOIA request, including those in litigation—performs a preliminary review of the potentially



UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

responsive records to remove any facially non-responsive documents from the review universe. The GIS then performs a review of each document to determine whether the document is responsive to the request, whether it contains any classified or other sensitive or privileged information that is exempt under one of the nine FOIA exemptions, and whether it contains information belonging to other equity holders, such as other federal agencies or third parties. When a GIS determines a document to be non-responsive, the Department counts the document as having been "processed" because the GIS had to conduct a review to make that determination.

22. During this process, the GIS consults other Department employees (including, for example, Attorney-Advisers within the Office of the Solicitor) as appropriate. These consultations often occur more than once in the process and are extremely important to inform the Department's decision about the applicability of any FOIA exemptions. The employees with whom the GIS consult are the subject matter experts concerning the sensitivity of the documents or subject matter at issue.

23. Additionally, if the GIS determines that a document contains another Departmental bureau or federal agency's information, or originated with the other bureau or agency, the GIS will send that document to the relevant bureau or federal agency for consultation or referral, in accordance with 5 U.S.C. § 552(a)(6)(B)(iii)(III) and 43 C.F.R. § 2.12(d). When OS consults with another bureau or agency, OS is generally still responsible for responding to the request and must account for the consultation in OS' processing times. In these instances, OS has no control over the timing of the consulting agency's response. While OS does inquire as to status at times, those inquires have no effect on the timeline of completion of the consultations, which regularly take many months to complete.

24. Alternatively, if the GIS determines that a document's equities lay solely with another bureau or federal agency, s/he redacts any OS information that OS is proposing to withhold



UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

under the FOIA and refers the document to that bureau or federal agency for review and direct reply to the requester.

25. Under certain circumstances, disclosure of the identity of the agency to which the consultation or referral was made could harm an interest protected by an applicable exemption, such as the exemption that protects ongoing law enforcement investigations. In these instances, OS endeavors to keep the agency's identity anonymous while the agency completes its review.

26. After completing the internal and external consultation processes, the GIS redacts any information that is exempt under the FOIA and marks documents that OS will release in full or in part with the required stamps, indicating the release determinations and FOIA exemptions applied. Once the GIS has completed this process, Attorney-Advisers within the Office of the Solicitor also must review documents to ensure the legal defensibility of redactions, before a final review by the OS FOIA Officer. Each step of this process is crucial to ensure that the Department is complying with its requirements under the FOIA while also safeguarding classified, sensitive, or privileged information. This process generally is not lengthy, though it is dependent upon the workload of the Attorney-Advisor and the FOIA Officer at the time. In this case, the expectation for only 29 pages is this process would be complete within a matter of days.

27. After this process is completed, the OS FOIA Office provides responsive processed documents to the requester with a cover letter indicating that responsive documents were located, which exemptions were applied to documents withheld in full (if any), and whether the requester should expect to receive additional release determinations from OS. The OS also provides an explanatory letter if no responsive documents were located, all responsive documents were withheld in full, or when OS can neither confirm nor deny the existence of documents.

28. The timeline to process any given record will depend on the complexity of the record, the number of internal and external consultations required, and other factors. Thus, while a one-page



UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

record containing equities of multiple agencies might require significant time to process as OS waits for the external agencies to clear the record, a one-hundred-page document that only contains the equities of only the OS might be processed in a much shorter timeframe.

29. For requests in litigation, after OS files its answer, it works with the plaintiff to determine a processing rate for the request(s) at issue in the litigation. OS' standard processing rate, based on its resources and its current FOIA workload, is an average of 500 pages per month. The date of the first production depends on (i) the status and scope of OS' search for potentially responsive records; (ii) whether the parties wish to negotiate any narrowing of the request; (iii) the complexity of the review involved; and (iv) the likely number of internal and external consultations needed before producing responsive records.

**CONCLUSION**

30. In summary, Plaintiff's request that OS complete its processing by the end of October 2026 is unreasonable given the circumstances. OS cannot force the outside agency to provide a response on the consultation by a date certain, and therefore, is unable to commit to any production by a date certain.

31. OS is currently making efforts to efficiently process Plaintiff's request and is doing so in line with its standard procedures, which are instituted to provide relief to all similarly situated litigation cases, as well as other pending FOIA requests.

32. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: October 9, 2026

Leah Fairman
Digitally signed by Leah Fairman
Date: 2026.10.09 14:24:30 -04'00'
Leah Fairman



UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970